**CIVIL MINUTES – GENERAL**     **'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:19-cv-06791-CAS(GJSx) | Date | February 12, 2020 |
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

Present: The Honorable     CHRISTINA A. SNYDER

| Catherine Jeang | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:          Attorneys Present for Defendants:

Not Present                    Not Present

**Proceedings:**     (IN CHAMBERS) - DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT (Dkt. [ 23 ], filed October 28, 2019)

## I.    INTRODUCTION

Plaintiff Wells Fargo Bank, National Association ("Wells Fargo") filed this action against defendant Transamerica Life Insurance Company on August 5, 2019. Dkt. 1. Wells Fargo alleges that Transamerica wrongfully increased the monthly deduction rates ('MDRs") of certain universal life insurance policies in violation of the terms of the policies and various states' laws. Id.

Transamerica filed the operative first amended complaint on October 28, 2019. Dkt. 22 ("FAC"). The FAC asserts claims for: (1) breach of contract; (2) contractual breach of the implied covenant of good faith and fair dealing; (3) violation of the Pennsylvania Insurance Bad Faith Statute ("Section 8371"); (4) violation of California's Unfair Competition Law ("UCL"); (5) violation of the Connecticut Unfair Trade Practices Act ("CUTPA"); (6) conversion; and (7) declaratory relief. See generally id.

Transamerica filed a motion to dismiss the FAC on November 22, 2019. Dkt. 23-1 ("Mot."). Wells Fargo filed an opposition on December 20, 2019. Dkt. 24 ("Opp."). Transamerica filed a reply on January 10, 2020. Dkt. 26 ("Reply").

The Court held a hearing on January 23, 2020. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.    BACKGROUND

Transamerica is an Iowa corporation with its principal place of business in Iowa. FAC ¶ 6. Wells Fargo alleges that Transamerica is authorized to do (and does substantial)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      'O'

| Case No. | 2:19-cv-06791-CAS(GJSx) | Date | February 12, 2020 |
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

business in California.  FAC ¶ 6.  At issue in this case are certain universal life insurance policies that Transamerica issued between 1990 and 2005.  Id. ¶ 1.

Wells Fargo is a national banking association that maintains its principal place of business in South Dakota.  FAC ¶ 5.  Wells Fargo acts as the securities intermediary for 15 Transamerica universal life insurance policies.  Id. ¶ 1.  These policies range in face amount from $400,000.00 to $35.5 million and were issued in California, Arizona, Connecticut, Florida, Illinois, Michigan, Pennsylvania, and Texas.  Id. ¶ 11.  Wells Fargo alleges that all 15 policies "are contracts of adhesion in that they are form policies drafted by Transamerica, . . . [a]ll 15 [p]olicies are substantially similar and are subject to the same or similar material terms and conditions."  Id. ¶ 20.

Transamerica's life insurance policies contain two components: (1) a "mortality" component, for which Transamerica charges a cost to cover the risk of the insured's death ("the cost of insurance"); and (2) a "cash value" component, where premiums paid in excess of the cost of insurance and other charges accumulate ("the Accumulation Value") and earn interest.  FAC ¶ 12.  Transamerica's policies "unbundle" these two components "to allow policyholders to choose whether to pay just enough premiums to cover the risk of death (i.e., pay solely for the life insurance) or pay more (subject to certain limitations) and build up a cash value that earns tax-deferred interest."  Id.  Transamerica deducts funds from the accounts through MDRs to cover the cost of insurance and other charges.  Id. ¶ 13.  If the balance of a particular universal life insurance policy is insufficient to cover these monthly charges, then the policy will enter a grace period and lapse unless additional payments are made.  Id.

Transamerica's universal life insurance policies include both guaranteed and non-guaranteed elements.  FAC ¶ 17.  Guaranteed elements—including the guaranteed minimum interest rate on which interest on the Accumulation Values accrue—are fixed and determined at a specific time, such as when a given policy is issued.  Id.  Transamerica, however, may adjust non-guaranteed elements, such as the MDRs, consistent with the universal life insurance policy's terms.  Id.

Wells Fargo's policies state that Transamerica "will determine the Monthly Deduction Rate for each policy month at the beginning of that policy month," or, in the case of 1 policy, at the beginning of each year.  FAC ¶ 18.  Wells Fargo alleges that at least some of its policies provide that "[a]ny change in the Monthly Deduction Rates will be prospective and will be subject to our expectations as to future cost factors.  Such cost

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-cv-06791-CAS(GJSx) | Date | February 12, 2020 |
|---|---|---|---|
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

factors may include, but are not limited to: mortality; expenses; interest; persistency; and any applicable federal, state and local taxes." FAC ¶ 18. Moreover, Wells Fargo's policies indicate that Transamerica "does not distribute past surplus or recover past losses by changing the Monthly Deduction Rates." Id. ¶ 19 (internal alterations omitted). According to Wells Fargo, then, the policies' terms limit Transamerica's ability to raise MDRs in two critical aspects, such that: "(a) changes can only be based on Transamerica's expectations as to future cost factors; and (b) changes must be prospective in nature only (*i.e.*, Transamerica cannot change rates to recover past losses (or distribute past surplus))." Id. ¶ 21.

Wells Fargo alleges that Transamerica raised the MDRs on 10 of Wells Fargo's policies in 2016 and 2017 and on 5 of Wells Fargo's policies in 2018. FAC ¶ 23. According to Wells Fargo, "Transamerica has never explained the methodology used to determine each policy's increase. However, recent calculations estimate that, on average, Transamerica has increased the Monthly Deduction Rate on the Policies by between 10% and 269%." Id. Wells Fargo therefore contends that Transamerica's MDR increases "constitute[] express breaches of the [p]olicies," as well as "breaches of both common law and codified implied covenant of good faith and fair dealing and a violation of" various states' laws. Id. ¶ 4. Wells Fargo asserts that the purpose of these increases is to "force Wells Fargo either to (a) pay exorbitant premiums that Transamerica knows would no longer justify the ultimate death benefits or (b) lapse or surrender their policies, thereby forfeiting the premiums paid by Wells Fargo . . . over the last decades." Id. ¶ 56.

## III.    LEGAL STANDARDS

### A.    Rule 12(b)(2)

When a defendant moves to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the "plaintiff bears the burden of establishing that jurisdiction is proper." Boschetto v. Hansing, 539 F.3d 1011, 1015 (9th Cir. 2008) (citation omitted). Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1127 (9th Cir. 2010) (quoting Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006)). The plaintiff cannot simply rely on the "bare allegations" of its complaint; however, uncontroverted allegations in the complaint must be taken as true, and "[c]onflicts between parties over statements contained in affidavits

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-cv-06791-CAS(GJSx) | Date | February 12, 2020 |
|----------|-------------------------|------|-------------------|
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

must be resolved in the plaintiff's favor." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004).

Generally, personal jurisdiction exists if: (1) it is permitted by the forum state's long-arm statute; and (2) the "exercise of that jurisdiction does not violate federal due process." Pebble Beach, 453 F.3d at 1154–55. "California's long-arm statute is co-extensive with federal standards, so a federal court may exercise personal jurisdiction if doing so comports with federal constitutional due process." Boschetto, 539 F.3d at 1015. "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" Schwarzenegger, 374 F.3d at 801 (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). Depending on the nature of the contacts between the defendant and the forum state, personal jurisdiction is characterized as either general or specific.

### 1.     General Jurisdiction

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) (quoting International Shoe, 326 U.S. at 317). A corporation's place of incorporation and principal place of business are the paradigmatic bases for general jurisdiction. Daimler AG v. Bauman, 571 U.S. 117, 137 (2014). Otherwise, "[t]he standard is met only by 'continuous corporate operations within a state [that are] thought so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely distinct from those activities.'" King v. Am. Family Mut. Ins. Co., 632 F.3d 570, 579 (9th Cir. 2011) (quoting International Shoe, 326 U.S. at 318). The standard for general jurisdiction "is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1224 (9th Cir. 2011).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:19-cv-06791-CAS(GJSx) | Date | February 12, 2020 |
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

### 2. Specific Jurisdiction

A court may assert specific jurisdiction over a claim for relief that arises out of a defendant's forum-related activities. <u>Rano v. Sipa Press, Inc.</u>, 987 F.2d 580, 588 (9th Cir. 1993). The test for specific personal jurisdiction has three parts:

> (1) The defendant must perform an act or consummate a transaction within the forum, purposefully availing himself of the privilege of conducting activities in the forum and invoking the benefits and protections of its laws;
>
> (2) The claim must arise out of or result from the defendant's forum-related activities; and
>
> (3) Exercise of jurisdiction must be reasonable.

<u>Id.</u>; <u>see also</u> <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 475–76 (1985). The plaintiff bears the burden of satisfying the first two prongs, and if either is not satisfied, personal jurisdiction is not established. <u>Schwarzenegger</u>, 374 F.3d at 802.

In contracts cases, courts conduct a "purposeful availment" analysis to determine the first prong of the specific jurisdiction test. <u>Id.</u> Because a contract is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction," a court must evaluate four factors to determine whether purposeful availment has occurred: (1) prior negotiations, (2) contemplated future consequences, (3) the terms of the contract, and (4) the parties' actual course of dealing. <u>Burger King</u>, 471 U.S. at 478–79. A single contract for the sale of goods to a plaintiff in the forum state may be sufficient for specific jurisdiction over a defendant, but only where the contract creates a "substantial connection" with the forum state. <u>Boschetto</u>, 539 F.3d at 1017. "The foreseeability of causing injury in another state is not a sufficient basis on which to exercise jurisdiction," without more. <u>Gray & Co. v. Firstenberg Mach. Co., Inc.</u>, 913 F.2d 758, 760 (9th Cir. 1990).

If the plaintiff establishes the first two prongs regarding purposeful availment and the defendant's forum-related activities, then it is the defendant's burden to "present a compelling case" that the third prong, reasonableness, has not been satisfied. <u>Schwarzenegger</u>, 374 F.3d at 802 (quoting <u>Burger King</u>, 471 U.S. at 477). The third prong requires the Court to balance seven factors: (1) the extent of the defendant's purposeful

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:19-cv-06791-CAS(GJSx) | Date | February 12, 2020 |
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

availment, (2) the burden on the defendant, (3) conflicts of law between the forum state and the defendant's state, (4) the forum's interest in adjudicating the dispute, (5) judicial efficiency, (6) the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum. Roth v. Garcia Marquez, 942 F.2d 617, 623 (9th Cir. 1991).

### B.     Rule 12(b)(6)

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. (internal citations omitted).

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:19-cv-06791-CAS(GJSx) | Date | February 12, 2020 |
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

## IV. DISCUSSION

### A. Personal Jurisdiction

Transamerica first moves to dismiss Wells Fargo's claims on the grounds that the Court cannot exercise personal jurisdiction over Transamerica. Mot. at 12. According to Transamerica, Wells Fargo's "allegations are insufficient to establish general or specific jurisdiction, and the FAC should be dismissed[.]" Id. Wells Fargo does not contend that the Court may exercise general jurisdiction over Transamerica. Opp. at 8 n.3. The Court therefore proceeds to determine whether the Court may exercise specific personal jurisdiction over Transamerica.

#### 1. Purposeful Availment

The first prong of the specific jurisdiction analysis requires that a non-resident defendant "purposefully avail [itself] of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws[.]" In re W. States Wholesale Nat. Gas Antitrust Litig., 715 F.3d 716, 741–42 (9th Cir. 2013) (internal citation omitted). For a case sounding in contract, "[a] showing that a defendant purposefully availed [itself] . . . typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." Schwarzenegger, 374 F.3d at 802. "For tort-based claims, the Ninth Circuit has stated that a court may exercise personal jurisdiction over a defendant whose only contact with the forum state is the purposeful direction of a foreign act having

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:19-cv-06791-CAS(GJSx) | Date | February 12, 2020 |
|---|---|---|---|
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

effect in the forum state." Healthcare Ally Mgmt. of California, LLC v. Med. Mut. of Ohio, No. 2:14-cv-09428-SJO-JEM, 2015 WL 12746216, at *5 (C.D. Cal. Jan. 26, 2015).

Wells Fargo alleges that, notwithstanding Transamerica's Iowa citizenship, Transamerica has purposely availed itself of the privileges of this forum. For example, Wells Fargo alleges that Transamerica previously maintained an office in Los Angeles, California; Transamerica housed its actuarial department in its Los Angeles office; Transamerica registered with the California Secretary of State's Office; and Transamerica maintains a registered agent for service of process in Los Angeles, California. FAC ¶ 7. In at least three other cases challenging Transamerica's allegedly impermissible MDR increases, the Court has found similar factors sufficient to conclude that Transamerica has purposely availed itself of the privileges of doing business in California. See Brighton Trustees v. Transamerica Life Ins. Co., No. 2:19-cv-04210-CAS-GJS, 2019 WL 6315541, at *7 (C.D. Cal. Aug. 28, 2019); Hamra v. Transamerica Life Ins. Co., No. 2:18-cv-06262-CAS-GJS, 2019 WL 468803, at *5 (C.D. Cal. Feb. 6, 2019); Feller v. Transamerica Life Ins. Co., No. 2:16-cv-01378-CAS-AJW, 2017 WL 6453262, at *5 (C.D. Cal. Dec. 11, 2017).

Accordingly, the Court finds that Wells Fargo has made an adequate showing under the purposeful availment prong sufficient to support the Court's exercise of specific personal jurisdiction over Transamerica.

### 2. Forum-Related Activities

The second prong of the specific personal jurisdiction analysis requires that plaintiffs' claims arise out of, or relate to, Transamerica's forum-related activities. Picot v. Weston, 780 F.3d 1206, 1211 (9th Cir. 2015) (internal citation omitted). The Ninth Circuit applies a "but for" test to determine whether claims relate to forum-related activities. Monster Energy Co. v. Vital Pharm., Inc., No. 5:18-cv-01882-JGB-SHK, 2019 WL 2619666, at *7 (C.D. Cal. May 20, 2019) (citing Ballard v. Savage, 65 F.3d 1495, 1500 (9th Cir. 1995)). Under this test, the question is: but for Transamerica's conduct in California, would plaintiffs' claims have arisen? As the Court has previously observed, "any event in the causal chain leading to the plaintiff's injury is sufficiently related to the claim to support the exercise of specific jurisdiction." Feller, 2017 WL 6453262, at *6 (citing Dubose v. Bristol-Myers Squibb Co., No. 17-cv-00244-JST, 2017 WL 2775034, at *3 (N.D. Cal. June 27, 2017)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-cv-06791-CAS(GJSx) | Date | February 12, 2020 |
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

Transamerica contends that Wells Fargo cannot make the required showing of a nexus between its claims and Transamerica's contacts. Mot. at 14. That is because, according to Transamerica, Wells Fargo "allege[s] no specific connection between the conduct that allegedly harmed [it]—the decisions to increase MDRs and subsequent implementation of the increases—and California." Id. Transamerica's argument on this basis is unavailing.

Here, Wells Fargo has presented a causal chain sufficient to establish a nexus between its claims and Transamerica's California contacts. Wells Fargo alleges that: "Transamerica designated its Los Angeles office as either its home office or marketing office in all of the Policies; Transamerica's Los Angeles office housed its actuarial department and priced most, if not all, the Policies; Transamerica's Los Angeles employees drafted the Policy forms, including language in dispute in this matter; Transamerica's office designed, prepared, issued, marketed, and received payments for most, if not all, of the Policies; . . . Transamerica's Los Angeles employees developed and evaluated the Monthly Deduction Rate increases at issue here; and a Policy that is the subject of this dispute was issued in California." FAC ¶ 8.These allegations are sufficient to establish, at this juncture, that but-for Transamerica's conduct in California, including the work of Transamerica's Los Angeles employees, Wells Fargo's claims would not have arisen. See LSH CO v. Transamerica Life Ins. Co., No. 2:18-cv-09711-SJO-KS, 2019 WL 3064422, at *6 (C.D. Cal. Mar. 20, 2019) (finding sufficient nexus between plaintiffs' claims related to MDR increases and Transamerica's contacts with California where fifteen of twenty-two policies identified Los Angeles as Transamerica's home office and remaining seven identified Los Angeles as Transamerica's marketing office); Feller, 2017 WL 6453262, at *6 (finding sufficient nexus based, in part, on similar allegations regarding involvement of former Los Angeles-based employees in Transamerica's MDR increases).

Accordingly, the Court finds that there is "an affiliation between the forum and the underlying controversy" sufficient to allow the Court to exercise specific personal jurisdiction over Transamerica. Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty., 137 S. Ct. 1773, 1780 (2017); accord Brighton Trustees, 2019 WL 6315541, at *8 (finding that plaintiffs challenging Transamerica's MDR increases had satisfied nexus requirement so as to allow the Court to exercise specific personal jurisdiction over Transamerica).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-cv-06791-CAS(GJSx) | Date | February 12, 2020 |
|----------|--------------------------|------|-------------------|
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

### 3.  Reasonableness

Wells Fargo has established the first two prongs regarding purposeful availment and Transamerica's forum-related activities.  Therefore, it is Transamerica's burden to "present a compelling case that the exercise of jurisdiction would not be reasonable." Schwarzenegger, 374 F. 3d at 802 (quoting Burger King, 471 U.S. at 477).  The third prong requires the Court to balance several factors: (1) the extent of the defendant's purposeful availment; (2) the burden on the defendant; (3) conflicts of law between the forum state and the defendant's state; (4) the forum's interest in adjudicating the dispute; (5) judicial efficiency; (6) the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.  Roth, 942 F.2d at 623.

Transamerica does not contend that exercising specific personal jurisdiction in the Central District would not "comport with fair play and substantial justice."  See Mot. at 12–13; Reply at 1.  This alone defeats Transamerica's specific personal jurisdiction challenge in light of plaintiffs' prima facie showing regarding the first two prongs.  See LSH CO, 2019 WL 3064422, at *7 (finding that it would be reasonable to exercise specific personal jurisdiction over Transamerica in the Central District in case challenging Transamerica's MDR increases because "Plaintiffs have met their burden of proving the first two prongs of specific jurisdiction and Defendant does not contest the third."); accord Galaxia Elecs. Co. v. Luxmax, U.S.A., No. 2:16-cv-05144-JAK-GJS, 2017 WL 2903182, at *10 (C.D. Cal. May 10, 2017) (denying motion to dismiss for lack of personal jurisdiction where plaintiffs made prima facie showing under "the first two prongs of the test for personal jurisdiction . . . [and] Defendants have made no such arguments" that exercise of jurisdiction would not be reasonable).

Accordingly, the Court concludes that Transamerica has sufficient contacts with the forum district, and litigating in the Central District of California, where a number of other actions remain pending involving Transamerica and its purported MDR increases, would not impose a considerable burden.  See Hamra, 2019 WL 468803, at *6 (finding it would be reasonable to exercise specific personal jurisdiction over Transamerica in the Central District); Feller, 2017 WL 6453262, at *8 (same); Brighton Trustees, 2019 WL 6315541, at *9 (same).  The exercise of specific personal jurisdiction over Transamerica with respect to Wells Fargo's claims is proper under the Due Process Clause, and the Court **DENIES** Transamerica's motion to dismiss for lack of personal jurisdiction.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-cv-06791-CAS(GJSx) | Date | February 12, 2020 |
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

### B.     Failure to State a Claim

####    1.     Breach of Contract Claim

Wells Fargo's breach of contract claim alleges that Transamerica materially breached the policies' terms in four respects: (1) by increasing the MDRs for reasons other than changes to its future cost expectations; (2) by increasing the MDRs in an attempt to circumvent the guaranteed minimum crediting rate; (3) by increasing the MDRs in an attempt to recoup past losses and recover for shortfalls in expected revenues; and (4) by imposing excessive cost of insurance rates, including by failing to lower these rates.  FAC ¶ 66(a)–(d).  Transamerica moves to dismiss Wells Fargo's claim, in part, insofar as it is premised on Wells Fargo's allegations that Transamerica increased the MDRs in an attempt to circumvent the guaranteed minimum crediting rate.  Mot. at 14.

To state a claim for breach of contract under California law, a party must plead: "(1) the existence of the contract , (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff."  Oasis W. Realty, LLC v. Goldman, 51 Cal. 4th 811, 821 (2011) (internal citation omitted).  At the pleading stage, "[w]hen reviewing whether a plaintiff has properly stated a cause of action for breach of contract, we must determine whether the alleged agreement is '*reasonably susceptible*' to the meaning ascribed to it in the complaint."  Hervey v. Mercury Casualty Co., 185 Cal. App. 4th 954, 964 (2010) (emphasis added) (citation omitted).  "So long as the pleading does not place a clearly erroneous construction upon the provisions of the contract, in passing upon the sufficiency of the complaint, we must accept as correct plaintiff's allegations as to the meaning of the agreement."  Marzec v. California Pub. Employees Ret. Sys., 236 Cal. App. 4th 889, 909 (2015) (citing Aragon–Haas v. Family Security Ins. Services, Inc., 231 Cal. App. 3d 232, 239 (1991)).  Where the terms of the policy are unambiguous, the Court will not infer a limitation on defendants which is not supported by the language of the policy.  See Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2015) ¶ 4:11 ("'Clear and explicit' policy language governs.") (quoting Powerine Oil Co., Inc. v. Supt. Ct., 37 Cal. 4th 377, 390 (2005)).

Here, Wells Fargo alleges that Transamerica "has breached the Policies materially . . . [including by] [i]ncreasing the Monthly Deduction Rate in an attempt to circumvent the guaranteed minimum crediting rate[.]"  FAC ¶ 66(b).  Wells Fargo elsewhere equates "crediting rate" with "interest rate."  See FAC ¶ 59 ("If Transamerica was crediting policyholder accounts with an interest rate higher than the 4% minimum guaranteed rate,

**CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:19-cv-06791-CAS(GJSx) | Date | February 12, 2020 |
|----------|--------------------------|------|-------------------|
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

it could compensate for any reduction in interest it earns on policy accounts due to lower interest rates by reducing the (non-guaranteed) crediting rate." Wells Fargo further alleges that "Transamerica is trying to do indirectly what it cannot do directly: it is using Monthly Deduction Rates to achieve an interest crediting rate that is lower than the guaranteed minimum interest crediting rate, which violates the Policies." FAC ¶ 59.

The Court previously dismissed a breach of contract claim, similarly premised on Transamerica's alleged attempt to circumvent the guaranteed minimum interest rate, in Brighton Trustees. There, institutional investor plaintiffs alleged that "Transamerica materially breached the policies by increasing the Monthly Deduction Rates in an attempt to circumvent the guaranteed minimum interest rate." Brighton Trustees, 2019 WL 6315541, at *10 (internal citations, quotation marks, and alterations omitted). The investors contended that by increasing the MDRs by as much as 100%, "Transamerica has used an increase in MDRs to do indirectly what it cannot do directly: it is using the Monthly Deduction Rates to achieve an interest crediting rate that is lower than the guaranteed minimum interest crediting rate, which violates the [investors'] Policies." Brighton Trustees, 2019 WL 6315541, at *10.

Wells Fargo cites to the Court's previous decision in Feller for the proposition that "if certain interest rate accruals are 'guaranteed,' a plausible reading of the policies is that defendants may not directly offset them by increasing the MDR based on its interest obligations." Opp. at 10 (citing Feller v. Transamerica Life Ins. Co., No. 2:16-cv-01378-CAS-AJW, 2016 WL 6602561, at *10 (C.D. Cal. Nov. 8, 2016)). Wells Fargo concedes, however, that "the Court only applied this reasoning in Feller to policies that did not list 'interest' as a cost factor[.]" Id.

Wells Fargo attaches an exemplar policy to the FAC, and Wells Fargo alleges that the exemplar policy provides that in setting MDRs, Transamerica may consider cost factors "includ[ing] . . . mortality; expenses; *interest*; persistency; and any applicable federal state, and local taxes." FAC ¶ 18 (emphasis added). In at least four other cases involving Transamerica's MDR increases, the Court has already concluded that policies which include this language cannot give rise to a breach of contract claim premised on a purported attempt to circumvent minimum guaranteed interest rates. See EFG Bank AG, Cayman Branch v. Transamerica Life Ins. Co., No. 2:16-cv-08104-CAS-AJW, 2017 WL 3017596, at *7 (C.D. Cal. July 10, 2017) ("the Court concludes that the Policies that list 'interest' among permissible 'cost factors' are not reasonably susceptible to an interpretation that would preclude Transamerica from considering its interest obligations while setting

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:19-cv-06791-CAS(GJSx) | Date | February 12, 2020 |
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

MDRs."); accord Brighton Trustees, 2019 WL 6315541, at *10; Feller, 2016 WL 6602561, at *10; Thompson v. Transamerica Life Ins. Co., No. 2:18-cv-05422-CAS-GJS, 2018 WL 6790561, at *8 (C.D. Cal. Dec. 26, 2018).

Following the hearing, the parties submitted a joint statement to the Court on February 10, 2020, clarifying that all fifteen policies at issue in this case "permit Transamerica to consider 'interest' in setting MDRS." Dkt. 28 at 2. Accordingly, the Court **DISMISSES** Wells Fargo's breach of contract claim, as alleged in ¶ 66(b) of the FAC, **without prejudice**.

## 2. Section 8371 Claim

With respect to Wells Fargo's policy that was issued in Pennsylvania, Wells Fargo alleges that "Transamerica's conduct constitutes bad faith breaches" in several respects, including by: (1) "[c]harging excessive Monthly Deduction Rates that deprived Wells Fargo of the benefit of its actual policy account values;" (2) "[b]asing Monthly Deduction Rates on considerations of interest income earned on policy accounts rather than mortality profits;" and (3) "[u]sing its discretion over Monthly Deduction Rates to circumvent contractual requirements for the guaranteed minimum crediting rate[.]" FAC ¶ 85. According to Wells Fargo, these breaches violate Section 8371, Pennsylvania's insurance bad faith statute, and give rise "to an award of punitive damages and court costs and attorney fees against Transamerica." Id. ¶ 88.

"There is no common law remedy in Pennsylvania for a claim of bad faith against insurers." Hanover Ins. Co. v. Ryan, 619 F. Supp. 2d 127, 140 (E.D. Pa. 2007). Instead, a statutory remedy exists whereby a court, after finding an insurer has acted in bad faith towards an insured, may take all of the following actions: (1) award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%; (2) award punitive damages against the insurer; and (3) assess court costs and attorney fees against the insurer. 42 Pa. Stat. and Cons. Stat. § 8371. "Section 8371 does not define the specific acts that would establish 'bad faith toward the insured,' but courts have subsequently determined several actions to constitute bad faith, including: (1) a frivolous or unfounded refusal to pay; (2) a failure to investigate into the facts; or (3) a failure to communicate with the insured." Hanover Ins. Co., 619 F. Supp. 2d at 140. "Section 8371 is broadly construed to effectuate the purpose of the statute." Meyer v. Cuna Mut. Grp., No. 03-cv-602, 2007 WL 2907276, at *12 (W.D. Pa. Sept. 28, 2007). Thus, "Pennsylvania courts . . . have not strictly limited statutory bad faith to the

**CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 2:19-cv-06791-CAS(GJSx) | Date | February 12, 2020 |
|---|---|---|---|
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

literal denial of benefits." Hilston v. Am. Gen. Life Ins. Co., 14-cv-7269, 2015 WL 2232986, at *4 (E.D. Pa. May 12, 2015).

Transamerica relies on Rancosky v. Washington Nat'l Ins. Co., 642 Pa. 153 (2017) for the proposition that "[s]ince [Wells Fargo] does not allege a *coverage dispute* as required by Rancosky, its Section 8371 claim fails." Reply at 5 (emphasis added). However, in Rancosky, the Supreme Court of Pennsylvania addressed the *burden of proof* required to prevail on a bad faith claim where the bad faith claim was premised on a denial of benefits. See Rancosky, 642 Pa. 156 ("Critically, when read in a vacuum, the plain language of Section 8371 provides little guidance in *answering the discrete legal question raised herein, namely, the level of proof required* to prevail in a bad faith claim.") (emphasis added). Even after Supreme Court of Pennsylvania's 2017 decision in Rancosky, courts have continued to recognize that Section 8371 extends beyond the context of denial of benefits. See, e.g., Williams v. Liberty Mut. Ins., No. 17-cv-3862, 2018 WL 2332019, at *3 (E.D. Pa. May 23, 2018) ("Section 8371 is not restricted to an insurer's bad faith in denying a claim. An action for bad faith may extend to the insurer's investigative practices."); accord Rosenthal v. Am. States Ins. Co., No. 1:18-cv-01755, 2019 WL 1354141, at *3 (M.D. Pa. Mar. 26, 2019) ("a plaintiff may also successfully assert an action for an insurer's bad faith in investigating a claim, such as a failure to conduct a reasonable investigation based upon available information, and failure to communicate with the claimant.").

Having determined that Wells Fargo's bad faith claim does not fail simply because Wells Fargo does not allege a *denial of benefits*, the Court must determine whether the FAC states a claim pursuant to Pennsylvania law. The Court finds instructive two cases interpreting Pennsylvania's bad faith insurance statute. In Jacoby v. AXA Equitable Life Ins. Co., a policyholder brought suit against an insurer regarding the insurer's "Vanishing Premium Policy," which the policyholder alleged "meant that after nine annual payments, the dividends earned would be used to pay all future premiums." No. 13-cv-6511, 2014 WL 7058224, at *1 (E.D. Pa. Dec. 15, 2014). The policyholder alleged that one of the insurer's employees notified the policyholder by letter that after the policyholder had paid the ninth payment, "no further premiums were due." Id. However, the insurer subsequently notified the policyholder "that the policy had been converted to a term policy after the tenth premium payment was not paid," that "the term policy expired," and the insurer "thereafter refused to reinstate the [p]olicy." Id. With respect to the policyholder's bad faith claim, the court noted that the policyholder's "allegations principally concern [the insurer's] conduct in connection with its discharge of obligations under the [p]olicy *after*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:19-cv-06791-CAS(GJSx) | Date | February 12, 2020 |
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

purchase by the [i]nsured, which still may be an appropriate foundation for a bad faith claim." Jacoby, 2014 WL 7058224, at *4 (emphasis in original). Accordingly, the court denied the insurer's motion dismiss, concluding that the court "cannot dismiss [the policyholder's] bad faith claim at this early stage" and that "[f]acts revealed in discovery will inform . . . whether [the insurer] acted reasonably in discharging its obligations under the [p]olicy." Id.

In W. Chester Univ. Found. v. MetLife Ins. Co. of Connecticut, a purchaser of two variable life insurance policies brought suit against the insurer, alleging that the insurer had fraudulently represented that investments made using the purchaser's initial out of pocket premiums would yield returns sufficient to cover all future payments. 259 F. Supp. 3d 211, 214 (E.D. Pa. 2017). The purchaser alleged that it had relied on these representations in purchasing the insurer's policies, but that the insurer had "developed a vanishing premium scheme for flexible premium variable life insurance policies and advanced the scheme through misleading and false representations." Id. The purchaser asserted a bad faith claim pursuant to Section 8371 on the basis that the insurer "intentionally reduced its investment return projections in order to conceal the risks associated with its vanishing premium scheme and to secure additional premium payments on the [p]olicies." Id. at 224. The court noted that the purchaser "alleges that for years *after* the [p]olicies were sold, [the insurer] manipulated its investment return projections to conceal the true nature of its vanishing premium scheme." Id. (emphasis in original). Thus, "[b]ecause the reach of § 8371 is broader that [the insurer] argues," the court "[wa]s unwilling to dismiss [the purchaser's] bad faith claim at the pleading stage." Id. The court determined that "[w]hether the deceptive conduct alleged . . . arose in the context of [the insurer's] discharge of its obligations under the [p]olicies will become more apparent through fact discovery. Because [the purchaser's] bad faith claim satisfies the pleading standard, and because it is not yet clear that [the insurer's] claim is barred as a matter of law," the court concluded that dismissal of the bad faith claim was not appropriate at the pleading stage. Id.

"Bad faith claims are fact specific and depend on the conduct of the insurer vis à vis the insured." Gold v. State Farm Fire & Cas. Co., 880 F. Supp. 2d 587, 598 (E.D. Pa. 2012). Because the Court cannot say, at this juncture, that Wells Fargo's claim is barred as a matter of law, consistent with Jacoby and W. Chester Univ. Found., the Court concludes that Wells Fargo's bad faith claim is more appropriately resolved on a motion for summary judgment. Accordingly, the Court **DENIES** Transamerica's motion to dismiss Wells Fargo's Section 8371 claim.

**CIVIL MINUTES – GENERAL**            **'O'**

| Case No. | 2:19-cv-06791-CAS(GJSx) | Date | February 12, 2020 |
|---|---|---|---|
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

### 3.    CUTPA Claim

With respect to its policies issued in Connecticut, Wells Fargo asserts a CUTPA claim against Transamerica.  FAC ¶¶ 96–104.  Wells Fargo relies on Transamerica's alleged violation of a different statute, the Connecticut Unfair Insurance Practices Act ("CUIPA"), Conn. Gen. Stat. § 38a-815 et seq., as the basis for Wells Fargo's CUTPA claim.  FAC ¶ 98.

CUTPA prohibits the use of "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a). "CUIPA defines 'unfair methods of competition' as applied to the insurance trade." Tucker v. Am. Int'l Grp., Inc., 179 F. Supp. 3d 224, 229 (D. Conn. 2016).  However, "CUIPA does not provide a private right of action." Tyll v. Stanley Black & Decker Life Ins. Program, 403 F. Supp. 3d 27, 38 (D. Conn. 2019).   As such, a "plaintiff may assert a private cause of action based on a substantive violation of CUIPA through CUTPA's enforcement provision." Karas v. Liberty Ins. Corp., 33 F. Supp. 3d 110, 117 (D. Conn. 2014).  "To succeed on such a CUTPA claim, a plaintiff must show that the defendant engaged in an act prohibited by CUIPA's substantive provisions, and that the act proximately caused the harm alleged." Belz v. Peerless Ins. Co., 46 F. Supp. 3d 157, 165 (D. Conn. 2014). "Misrepresentations and false advertising of insurance policies" constitute "unfair methods of competition and unfair and deceptive acts or practices" that violate CUIPA. Conn. Gen. Stat. § 38a-816(1).

Transamerica seeks dismissal of Wells Fargo's CUTPA claim on two bases: (1) Wells Fargo does not allege that a CUTPA violation "occurred in Connecticut"; and (2) Wells Fargo does not plausibly allege CUIPA violation, as is required to serve as the "borrowed" law for the purposes of Wells Fargo's CUTPA claim.  Mot. at 18.  The Court addresses each of Transamerica's contentions in turn.

#### a.    Nexus to Connecticut

As a preliminary matter, Transamerica argues that Wells Fargo's CUTPA claim "fails because [Wells Fargo] does not allege that the claim is based on any conduct in Connecticut." Mot. at 19.  That is because, according to Transamerica, "CUTPA claims must be based on conduct that occurred within the State of Connecticut or [on a] violation [that] is tied to a form of trade or commerce intimately associated with Connecticut, or if, where Connecticut choice of law principles are applicable, those principles dictate application of Connecticut law." Id.

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:19-cv-06791-CAS(GJSx) | Date | February 12, 2020 |
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

"[T]he plain language of CUTPA is directed at unfair competition taking place" in Connecticut. <u>Victor G. Reiling Assocs. & Design Innovation, Inc. v. Fisher-Price, Inc.</u>, 406 F. Supp. 2d 175, 200 (D. Conn. 2005). In <u>Connecticut Gen. Life Ins. Co. v. True View Surgery Ctr. One, LP</u>, another district court dismissed the plaintiff insurer's CUTPA claim because of a lack of nexus to Connecticut. 128 F. Supp. 3d 501, 513 (D. Conn. 2015). There, Cigna, a Connecticut-based insurer, asserted a CUTPA claim against surgical centers that were "out-of-network providers with whom Cigna has no contractual relationship." <u>Id.</u> at 505–06. Cigna alleged that the Texas-based surgical centers engaged in an overbilling scheme, submitting inflated requests for reimbursement with respect to services that the surgical centers provided to Cigna's insured at the centers' Texas facilities, pursuant to insurance policies that Cigna issued in Texas. <u>Id.</u> at 513. The surgical centers argued that "the commercial relationship between defendants and their customers occurs exclusively in Texas, and the sole contact with Connecticut is based on the coincidence that the patients' Texas insurance policies are administered by a company headquartered in Connecticut." <u>Id.</u> In response, Cigna contended that "the thousands of fraudulent claims, related appeals, and other correspondence defendants directed to Cigna in Connecticut demonstrates sufficient contact with Connecticut to state a CUTPA claim." <u>Id.</u> The court determined these allegations were insufficient to satisfy CUTPA's Connecticut-nexus requirement because "the allegations levied against the surgical centers are based on their actions of inducing Cigna plan members to obtain treatment at their facilities in Texas and rendering medical services at discounted rates to those plan members at the facilities in Texas." <u>Id.</u> Thus, "[w]hile Cigna received fraudulent bills at its Connecticut headquarters, the alleged activity of the surgical centers that gives rise to a potential CUTPA claim does not fall within the purview of a plain language reading of [CUTPA]." <u>Id.</u>

Here, Wells Fargo alleges that "Transamerica's Los Angeles employees developed and evaluated the Monthly Deduction Rate increases at issue here[.]" FAC ¶ 7. To some extent, then, it appears that the conduct that is the subject of Wells Fargo's claim occurred *outside* Connecticut. On the other hand, Wells Fargo alleges that Transamerica issued the three policies that are the subject of Wells Fargo's CUTPA claim *in* Connecticut. <u>Id.</u> ¶ 74. Wells Fargo further argues that "Transamerica referenced the 'original illustrations provided at issue' in its letter, which was in Connecticut for the Connecticut Policies; and Wells Fargo's predecessors-in-interest—the policy holders who received the Connecticut Policies and corresponding illustrations issued in Connecticut—assigned their rights to Wells Fargo." Opp. at 17. Whether a sufficient nexus to Connecticut exists is a matter

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:19-cv-06791-CAS(GJSx) | Date | February 12, 2020 |
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION v. TRANSAMERICA LIFE INSURANCE COMPANY |

more appropriately decided on a motion for summary judgment. At the pleading stage, however, Wells Fargo's allegations that Transamerica issued the three relevant policies in satisfy CUTPA's nexus requirement. See Conn. Gen. Stat. § 42-110a(4) ("'Trade' and 'commerce' means the *advertising*, the *sale* or rent or lease, the *offering for sale* or rent or lease, or the *distribution of any services* and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value *in this state*.") (emphases added).

### b.  CUIPA Through CUTPA Claim

Having determined that Wells Fargo has satisfied CUTPA's nexus requirement, the Court turns to the merits of Wells Fargo's CUTPA claim. Here, Wells Fargo asserts a CUTPA claim, based on Transamerica's alleged violation of CUIPA, premised on Transamerica's purported misrepresentations and false advertising related to Transamerica's universal life insurance policies. The parties dispute what is required to adequately allege "misrepresentations and false advertising" for CUIPA purposes.

According to Transamerica, "Connecticut and federal courts . . . have consistently required a plaintiff alleging a CUIPA § 38a-816(1) violation through CUTPA to plead all four [common law] negligent misrepresentation elements." Reply at 7–8. Transamerica relies on the Supreme Court of Connecticut's opinion in Nazami v. Patrons Mut. Ins. Co., 280 Conn. 619 (2006). There, the Supreme Court of Connecticut recognized "that CUTPA affords a private cause of action to individuals . . . [and] that individuals may bring an action under CUTPA for violations of CUIPA." Id. at 625. The Court held that "[i]n order to sustain a CUIPA cause of action under CUTPA, a plaintiff must allege conduct that is proscribed by CUIPA." Id. Looking to Section 38a-816(1), the CUIPA provision which prohibits "misrepresentations and false advertising," the Court concluded that "the plaintiff has failed to allege facts that constitute a misrepresentation under that statute." Nazami, 280 Conn. at 625. That is because, "[t]raditionally, an action for negligent misrepresentation requires the plaintiff to establish (1) that the defendant made a misrepresentation of fact (2) that the defendant knew or should have known was false, and (3) that the plaintiff reasonably relied on the misrepresentation, and (4) suffered pecuniary harm as a result." Id. at 626.

In response, Wells Fargo argues that "the Connecticut Supreme Court in Nazami did not articulate a different CUTPA pleading requirement[.]" Opp. at 16. Contrary to Wells Fargo's assertion, however, it appears that courts construing Section 38a-816(1) *have*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:19-cv-06791-CAS(GJSx) | Date | February 12, 2020 |
|----------|-------------------------|------|-------------------|
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

looked to the four negligent misrepresentation elements to determine whether, for CUIPA purposes, sufficient "misrepresentations and false advertising" have been alleged. See, e.g., Ensign Yachts, Inc v. Arrigoni, No. 3:09-cv-209 (VLB), 2010 WL 918107, at *15 (D. Conn. Mar. 11, 2010) ("In order to succeed on a 'CUIPA through CUTPA' claim under this section, the plaintiff must allege and prove the four established elements of a negligent misrepresentation claim[.]") (internal citation omitted).

The Court need not resolve the parties' dispute at this juncture. To the extent that Connecticut law requires Wells Fargo to satisfy the four negligent misrepresentation elements in order to state a "CUIPA through CUTPA" claim based on "misrepresentations and false advertising," Wells Fargo does so here. For example, Wells Fargo alleges that three of its policies were issued in Connecticut, and Transamerica's policies allow Transamerica to adjust the MDR subject to cost factors including: "mortality; expenses; interest; persistency; and any applicable federal, state and local taxes." FAC ¶¶ 18, 74. Wells Fargo further alleges that all the policies at issue in this case provide that Transamerica "does not distribute past surplus or recover past losses by changing the Monthly Deduction Rates." Id. ¶ 19 (internal alterations omitted). After Transamerica began raising MDRs, Wells Fargo alleges that "Transamerica purported to justify these increases by citing 'current expectations regarding our future costs of providing this coverage.'" Id. ¶ 25. According to Wells Fargo, after other policyholders requested that Transamerica identify the specific cost factors it relied upon in increasing the MDRs, "Transamerica finally identified mortality . . . As expressly permitted by the Policy, Transamerica increased the Monthly Deduction Rates as a result of this cost factor." Id. ¶ 28 (internal citation omitted). Despite these representations, however, Wells Fargo alleges *inter alia* that "Transamerica implemented its Monthly Deduction Rate increases to recoup lost profit expectations and boost its profit margins, rather than in response to projections of future cost factors." Id. ¶ 30. Wells Fargo alleges that Transamerica represented to policyholders, like Wells Fargo, that it would not raise MDRs in an attempt to recoup past losses; that Transamerica increased the MDRs increases based on mortality and interest considerations; and that, despite these representations, Transamerica did, in fact, raise MDRs to recoup past losses. Therefore, Wells Fargo adequately alleges a misrepresentation of fact.

Moreover, Wells Fargo's allegations are sufficient to establish, at the pleading stage, that Transamerica knew, or should have known, that these representations were false. Relying in part on statistics from the National Center for Health Statistics, Wells Fargo alleges that "mortality rates have improved steadily each year since the Policies were

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                                   **'O'**

| Case No. | 2:19-cv-06791-CAS(GJSx) | Date | February 12, 2020 |
|---|---|---|---|
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

issued." FAC ¶ 35. Wells Fargo further alleges that, consistent with this empirical evidence and in contrast with Transamerica's representations to policyholders that changes in mortality rates informed the MDR increases, "Transamerica regularly informed regulators through its filings that it had *not observed a negative change* in its mortality experience." Id. ¶ 42 (emphasis added). Accordingly, taken as true, these allegations demonstrate that Transamerica "knew or should have known" that Transamerica's representations to policyholders were false.

To the extent that a "CUIPA through CUTPA" claim must satisfy the elements for negligent misrepresentation, Wells Fargo's allegations also satisfy the "detrimental reliance" and "pecuniary harm" elements. Wells Fargo alleges that each of the Accumulation Values of its Transamerica policies "functions as an investment vehicle and is where excess premiums accumulate and earn . . . tax-deferred interest." FAC ¶ 12. Moreover, Wells Fargo contends that "the right to fund one's policy as one chooses is an expressly permitted right and benefit of the policies, including Wells Fargo's Policies." Id. ¶ 24. These allegations plausibly raise an inference that the ultimate entitlement holder of Wells Fargo's policies acquired the policies based on Transamerica's representations as reflected in the policies' terms. Moreover, Wells Fargo asserts that "[a]s a direct and proximate cause of the foregoing unfair methods of competition and unfair and deceptive acts or practices with the respect to the Connecticut Policies, Wells Fargo has suffered and will suffer an ascertainable loss of money or property." Id. ¶ 100. Elsewhere in the FAC, Wells Fargo points to "the funds Transamerica deducted from its Accumulation Values in excess of the amounts permitted by the terms of the Policies due to Transamerica's wrongful increases in Monthly Deduction Rates" as an example of the harm it has suffered due to Transamerica's alleged misconduct. See Id. ¶ 106.

In accordance with the foregoing, the Court **DENIES** Transamerica's motion to dismiss Wells Fargo's CUTPA claim.

### 4.    Conversion Claim

Wells Fargo also asserts a claim for conversion against Transamerica. FAC ¶¶ 105–11. The gravamen of Wells Fargo's conversion claim is that Wells Fargo "had a financial interest in the funds that Transamerica deducted from its Accumulation Values in excess of the amounts permitted by the terms of the Policies based upon the MDR increase. And by increasing the MDR, Transamerica also interfered with that financial interest by making Monthly Deductions in authorized amounts from the Accumulation Values." Opp. at 18.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-cv-06791-CAS(GJSx) | Date | February 12, 2020 |
|---|---|---|---|
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

California law recognizes "the tort of conversion . . . as the wrongful exercise of dominion over personal property of another." Voris v. Lampert, 7 Cal. 5th 1141, 1150 (2019) (internal citation and quotation mark omitted). To establish a claim for conversion, a plaintiff must establish the following elements: "(a) plaintiff's ownership or right to possession of personal property, (b) defendant's disposition of property in a manner inconsistent with plaintiff's property rights, and (c) resulting damages." Id. Transamerica seeks dismissal of Wells Fargo's conversion claim because, according to Transamerica, Wells Fargo "does not allege an immediate right of possession to the Accumulation Value or any identifiable sum of money[.]"[1] Mot. at 21.

### a. Identifiable Sum of Money

Pursuant to California law, "money cannot be the subject of an action for conversion unless a specific sum capable of identification is involved." Voris, 7 Cal. 5th at 1151. There is no requirement, however, that "each coin or bill be earmarked." Id. Based on these requirements, Transamerica contends that dismissal of plaintiffs' conversion claim is proper "[b]ecause [p]laintiffs do not allege an immediate right of possession to an *identifiable sum* of money[.]" Mot. at 18 (emphasis added). Based on these requirements, Transamerica contends that dismissal of Wells Fargo's conversion claim is proper "[b]ecause [Wells Fargo] does not allege an immediate right of possession to . . . any *identifiable sum* of money[.]" Mot. at 21 (emphasis added).

Here, Wells Fargo alleges that "it had a property interest in the funds Transamerica deducted from its Accumulation Values in excess of the amounts permitted by the terms of the Policies due to Transamerica's wrongful increases in Monthly Deduction Rates." FAC ¶ 106. Wells Fargo identifies each of the 15 policies at issue in this case by policy number. See Dkt. 22-1, Exhibit 1. That is sufficient, at this juncture, to withstand a motion to dismiss. See Lennard v. Yeung, No. 2:10-cv-09322-MMM-AGR, 2011 WL 13217784, at *16 (C.D. Cal. June 7, 2011) ("[A]t this stage, plaintiffs need only describe the property allegedly converted sufficiently that defendants can answer and develop a defense.").

---

[1] Transamerica does not appear to argue that the allegations in Wells Fargo's FAC fail to satisfy the "disposition of property" and "resulting damages" elements.

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-cv-06791-CAS(GJSx) | Date | February 12, 2020 |
|---|---|---|---|
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

### b.    Immediate Right to Possession

Transamerica next seeks dismissal of Wells Fargo's conversion claim on the grounds that the "FAC does not allege that [Wells Fargo] had a right of immediate possession of its Policies' Accumulation Values[.]" Reply at 9. In response, Wells Fargo contends that "the Policies, in fact, provide Wells Fargo with an immediate *financial interest* in its Accumulation Values, albeit a limited one, by permitting Wells Fargo to choose to either maintain a balance and accrue the guaranteed minimum interest or use that balance to pay for the Policies' premiums and expenses." Opp. at 18 (emphasis added). According to Wells Fargo, its "rights to the Accumulation Value balance may not be unfettered, [but] they certainly exist and may be enforced immediately within the Policies' limitations." Id.

In <u>Brighton Trustees</u>, institutional investor plaintiffs asserted a claim for conversion against Transamerica based on allegations that "Transamerica committed conversion by deducting funds from plaintiffs' Accumulation Values without permission." 2019 WL 5784925, at *8 (internal alterations omitted). The investors' then-operative complaint alleged that "the Accumulation Value is paid out only upon the death of the insured, and a *policyholder cannot withdraw the Accumulation Value*, except by terminating the policy or reducing the death benefit by the same amount." Id. at *10 (emphasis in original) (internal alterations omitted). The Court dismissed the investors' conversion claim without prejudice because the investors "ha[d] not adequately alleged a 'right to immediate possession' of the funds that form the basis for [the investors'] conversion claim." Id.

Here, Wells Fargo relies on <u>Welco Elecs., Inc. v. Mora</u>, 223 Cal. App. 4th 202, 210 (2014), for the proposition that "there may be an action for conversion, not only of the intangible rights represented by special instruments which give control, such as an insurance policy, but also of such rights alone, as in the case of the corporate stock apart from the certificate." Opp. at 18 (internal alterations omitted). According to Wells Fargo, then, "[b]y drawing upon the Accumulation Value for its unlawful MDR increases, . . . Transamerica deprives Wells Fargo from using its Accumulation Value" to "choose to either maintain a balance and accrue the guaranteed minimum interest or use that balance to pay for the Policies' premiums and expenses." Opp. at 18.

Wells Fargo's reliance on <u>Welco</u>, however, is misplaced. There, the Court of Appeal determined that "Defendant wrongfully caused a charge to plaintiff's credit card account by having a specific sum of money paid through defendant's credit card terminal into defendant's bank account. Plaintiff had a property right in its credit card account because

**CIVIL MINUTES – GENERAL**     '**O**'

| Case No. | 2:19-cv-06791-CAS(GJSx) | Date | February 12, 2020 |
|----------|-------------------------|------|-------------------|
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

plaintiff's interest was specific, *plaintiff had control over its credit card account*, and plaintiff had an exclusive claim to the balance in the account." Welco, 223 Cal. App. 4th at 211 (emphasis added). To prevail on a claim for conversion, a plaintiff must establish actual possession, *or* ownership with the right to immediate possession, of the thing allegedly being converted. See In re Bailey, 197 F.3d 997, 1000 (9th Cir. 1999). Welco is therefore inapposite because it is a case involving *actual* possession—in contrast, Wells Fargo lacks actual possession because the funds that form the basis of Wells Fargo's conversion claim are "specific funds placed in the custody of Transamerica for the benefit of Wells Fargo[.]" FAC ¶ 107.

Moreover, in Welco, the California Court of Appeal held that the fact that "the taking was something that affected plaintiff's rights with a third party does not mean that there has not been a conversion of intangible property . . . [because] there can be a conversion of intangible rights represented by special instruments such as a bank checkbook, insurance policy, or stock certificate, all of which involve a taking by the defendant of the plaintiff's property rights exercised through a third party." Welco, 223 Cal. App. 4th at 212. In other words, the Court of Appeal merely determined that the alleged misappropriation of credit card information, which the Court of Appeal likened to "intangible property," gave rise to a claim for conversion where the information was used to wrongfully access the plaintiff's funds. Here, the Court has already determined that Wells Fargo has sufficiently alleged a cognizable property interest in the Accumulation Values sufficient to state a claim for conversion. Accordingly, Welco is inapt.

Because Wells Fargo does not allege that it has actual possession of its Accumulation Values or the funds in the Accumulation Values, Wells Fargo must allege ownership with a right to immediate possession. See In re Bailey, 197 F.3d at 1000; accord Yakima Co. v. Lincoln Gen. Ins. Co., 583 F. App'x 744, 747 (9th Cir. 2014) ("The district court properly dismissed Yakima's conversion cause of action because at the time of the alleged conversion, Yakima did not have an *immediate right to possession* of the funds in dispute.") (emphasis added). The FAC is devoid of any allegations that Wells Fargo has a right to immediate possession of the funds that form the basis for its conversion claim. As such, the Court **GRANTS** Transamerica's motion to dismiss Wells Fargo's conversion claim **without prejudice**.

| **CIVIL MINUTES – GENERAL** | | | **'O'** |
|---|---|---|---|
| Case No. | 2:19-cv-06791-CAS(GJSx) | Date | February 12, 2020 |
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

## V.    CONCLUSION

In accordance with the foregoing:

1. The Court **DENIES** Transamerica's motion to dismiss for lack of personal jurisdiction;

2. The Court **DISMISSES** Wells Fargo's breach of contract claim, as alleged in ¶ 66(b) of the FAC, **without prejudice**;

3. The Court **DENIES** Transamerica's motion to dismiss Wells Fargo's Section 8371 claim;

4. The Court **DENIES** Transamerica's motion to dismiss Wells Fargo's CUTPA claim;

5. The Court **DISMISSES** Wells Fargo's conversion claim **without prejudice**.

Wells Fargo shall file a second amended complaint within **thirty (30) days**.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |